UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

CYNTHIA O.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

Case No. 6:18-cv-00446-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Cynthia O. ("plaintiff"), seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[2] Because

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

[2] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

1 – OPINION AND ORDER

the Commissioner's decision is not supported by substantial evidence, it is REVERSED and REMANDED for further proceedings.

## BACKGROUND

Born in 1953, plaintiff was 59 years old on the alleged onset date. Tr. 90. Plaintiff has past relevant work as a secretary. Tr. 30.

Plaintiff has been diagnosed with pathological gambling, major depressive disorder, bulimia nervosa, hypothyroidism, posttraumatic stress disorder ("PTSD"), adjustment disorder, agoraphobia, panic disorder, anxiety disorder, dysthymic disorder, and Stage III chronic kidney disease. Tr. 353-54, 456, 465, 514, 556, 623, 632, 680.

Plaintiff was terminated from her most recent work as a secretary at the Lane County School District after she admitted to embezzling funds from the school. Tr. 180, 196. She was ordered to pay restitution and sentenced to twenty-two months in prison, of which she served sixteen. Tr. 196, 484. Prior to her prison sentence, plaintiff began treatment for her gambling addiction. Tr. 355-62.

Plaintiff suffers from PTSD and anxiety resulting from her older brother sexually abusing her from age nine to sixteen. Tr. 351-52, 632. Her parents knew about the abuse, but never did anything to stop it. *Id.* Plaintiff also was physically abused by her first husband. He began abusing her in 1974, and "[s]he suffered broken bones, [a] fractured skull, and bruises until she divorced him in 1981." Tr. 352.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on February 2, 2014, alleging disability beginning February 11, 2013. Tr. 18. Plaintiff's claim was initially denied on June 27, 2014, and upon reconsideration on January 25, 2015. *Id.* A hearing was held before an Administrative Law

Judge ("ALJ") on February 9, 2017, in which the plaintiff testified, as did a vocational expert ("VE"). Tr. 39-79. On April 20, 2017, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18-32. After the Appeals Council denied her request for review, plaintiff filed a complaint in this court. Tr. 1-7. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The reviewing court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. This sequential analysis is set forth in the Social Security regulations, 20 C.F.R. §§ 404.1520, 416.920, in Ninth Circuit case law, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), and in the ALJ's decision in this case, Tr. 19-20.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity after February 11, 2013, the alleged onset date. Tr. 20.

At step two, the ALJ found plaintiff has the following severe impairments: anxiety disorder, PTSD, affective disorder, gambling addiction, and an eating disorder. Tr. 21.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 22. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined that she could perform a full range of work at all exertional levels, except she was limited to no more than frequent interaction with the general public and she should have no close cooperative work with coworkers. Tr. 24.

At step four, the ALJ found plaintiff was able to perform her past relevant work as a secretary. Tr. 30.

Although the ALJ was not required to continue the sequential analysis, he proceeded to step five and determined, in the alternative, that plaintiff could perform jobs that exist in significant numbers in the national economy, including general administrative clerk, data entry clerk, and billing typist. Tr. 31.

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly discounting her subjective symptom testimony, erroneously assessing the medical opinions of Dr. Anderson and Zana Zeigler,

improperly rejecting the lay witness testimony of her cousins, and erroneously evaluating her severe impairments.

I. **Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's

statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

A.  **Symptom Improvement**

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Here, the ALJ found that plaintiff's "mental health records from 2015 continued to show improved functioning." Tr. 27. At an appointment in February 2015, plaintiff reported to her therapist that she had "achieved a much higher level of functioning." Tr. 617. Plaintiff's therapist noted that plaintiff had "made significant progress in treatment." Tr. 618. Although a year before, plaintiff "often left sessions early[,] reporting that she had felt overwhelmed by the experience of talking about herself and her life," plaintiff was better able to tolerate the challenges of therapeutic work. Tr. 620. However, at that same appointment, plaintiff's therapist noted that on most days, plaintiff experienced "debilitating anxiety." Tr. 617. Moreover, in February and July 2016, plaintiff reported worsening anxiety, panic, and depression. Tr. 630, 645.

Accordingly, even though plaintiff's condition had improved, the record reflects that she continued to experience significant mental health symptoms. The fact that plaintiff, at times, experienced temporary improvement does not demonstrate her symptoms were effectively treated. Furthermore, mental health symptoms often wax and wane over time; therefore, isolated instances of improvement are not sufficient evidence to demonstrate that a claimant is not disabled. *Garrison*, 759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F. 3d 1195, 1205 (9th Cir. 2001) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement

over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). For these reasons, the ALJ erred in concluding that symptom improvement constituted a clear and convincing reason for discounting plaintiff's testimony.

### B. Inconsistent Statements

The ALJ found that plaintiff's ability to volunteer at a senior home, take care of her mother, and go outdoors for exercise showed that she was "not socially isolated and she [was] cognitively intact, and it [was] inconsistent with her reports of worsening mental health symptoms." Tr. 26. However, plaintiff only spent about an hour-and-a-half per month volunteering at the senior home, and she told her cousins even that was "too much for her." Tr. 343. Moreover, it is not clear how the fact that plaintiff spent time taking care of her mother or went outside to exercise establishes that she was not socially isolated or is inconsistent with her reports of worsening mental health. Indeed, plaintiff's therapist noted that plaintiff's anxiety and depression limit her "participation in a more active social life." Tr. 617. The therapist further noted that plaintiff "goes out very little due to anxiety and panic attacks," and that her "severe panic attacks" "cause her to isolate and keep her confined to her home more than she would like to be." Tr. 651, 671.

The ALJ also discounted plaintiff's testimony because she "testified that she was not 'writing' a book, but this is not consistent with her report to her therapist." Tr. 23 (citing Tr. 657, 673). In November 2016, plaintiff reported to her therapist that she was "so consumed with her book that she [was] writing and that it feels like that is what gives her a purpose right now." Tr. 657. In December 2016, she shared with her therapist that "she enjoys working on a book that she has been writing for her grandchildren. She calls it 'My Grandchildren's Ancestry.'" Tr. 673. At the hearing, plaintiff explained that the book is essentially a scrapbook of pictures of

7 – OPINION AND ORDER

her parents and grandparents, and she is making it for her grandchildren so they will know where they came from. Tr. 50-51. She further explained that there is no narrative story in the book, just family trees that she diagramed and some biographic information like birthdates. Tr. 51-52. The ALJ seized on the words "writing" and "book,' when in fact plaintiff was merely compiling a scrapbook. This constitutes a dispute over semantics, and does not rise to a meaningful inconsistency in plaintiff's testimony.

The Commissioner argues that plaintiff's testimony that she worked on the book to ease her mental symptoms is inconsistent with her statements to treatment providers that "she enjoyed working on her book and found it meaningful." Def. Br. 8, ECF #24. However, an activity can ease mental symptoms and at the same time be enjoyable and meaningful. In fact, one would expect that an enjoyable and meaningful activity would be helpful in easing mental health symptoms. Therefore, plaintiff's purportedly inconsistent statements do not constitute a clear and convincing reason for discounting her testimony.

### C. Activities of Daily Living

An ALJ may invoke activities of daily living in the context of determining symptom allegation credibility to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the Commissioner cited both alternative rationales, but then stated "[t]his was the case here." Def. Br. 10, ECF #24. It is not clear which of the two permissible rationales the Commissioner was relying on to discount plaintiff's testimony, or whether the Commissioner intended to rely on both. Thus, the court addresses both.

To properly discredit a claimant based on a contradiction between her activities and her testimony, "[t]he ALJ must state specifically which symptom testimony is not credible and what

facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). In finding that plaintiff was not disabled, the ALJ cited plaintiff's ability to volunteer at the nursing facility, take care of her mother, work on a book, and bake cookies for a friend. Tr. 23, 27. The ALJ never indicated which symptom testimony was contradicted by those activities, other than pointing out the purported inconsistency regarding whether plaintiff was writing a book or making a scrapbook, which is invalid for the reasons discussed above. Accordingly, the alleged inconsistency between plaintiff's activities and her testimony does not constitute a clear and convincing reason for discounting her testimony.

With regard to transferable work skills, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Here, however, the ALJ did not identify how any of plaintiff's activities transferred to gainful work. Moreover, it does not appear that plaintiff spent a substantial part of her day engaged in such activities. Plaintiff spent only an hour-and-half per month volunteering at the senior home. Tr. 343. Plaintiff's "book" was merely a scrapbook of pictures of her parents and grandparents, and the record shows that plaintiff made cookies for a friend on only one occasion. Tr. 50-51, 662.

Moreover, while plaintiff reported that she had become the primary care giver for her mother, the record reflects that she began taking care of her mother shortly before her mother's death. Tr. 671. It is also not clear what caring for her mother actually entailed. The record does not detail what plaintiff did for her mother or how much time she spent doing it. Tr. 629. Given that plaintiff's caretaking activities lasted for a short time and there is very little explanation as to

what those activities involved, the caretaking activities do not constitute a clear and convincing reason for discounting plaintiff's testimony.

The ALJ also relied on the fact that plaintiff was reconnecting with her daughter and grandchildren. Tr. 27. In December 2016, plaintiff reported that "friends and several family members ha[d] turned their backs on her" and she was "just starting to reconnect with her daughter who would not speak to her or let her see her grandchildren for several months/years." Tr. 671. It is not clear how plaintiff's potential reconciliation with her family members contradicts any of her testimony. *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Moreover, reconciling with family members does not qualify as "the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). Accordingly, the fact that plaintiff was beginning to reconnect with her family does not qualify as a clear and convincing reason for discounting her testimony.

### D. Exaggerated Symptom Reports

The ALJ found that plaintiff exaggerated the degree of her chronic kidney disease by reporting to her therapist that she was going into kidney failure. Tr. 27. However, the record reflects that plaintiff was suffering from "acute renal failure." Tr. 589, 714, 731, 734. As such, it does not appear that plaintiff exaggerated her symptoms.

The ALJ also found that plaintiff "self-reported extreme symptoms of depression and anxiety, but her mental status exam was largely unremarkable." Tr. 27 (citing Tr. 630, 633). Plaintiff scored a 45 on the HAI anxiety screen and a 46 on the BDI-II, indicating extreme anxiety and depression. Tr. 630. While the mental status exam did not indicate any cognitive deficits, plaintiff presented with pressured speech and labile affect. Tr. 633. Moreover, plaintiff presented as depressed, fearful, and anxious at a number of appointments. Tr. 356, 482, 515,

620.  Thus, the absence of cognitive deficits on plaintiff's mental status exam does not contradict her reports of depression and anxiety.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (rejecting ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety").

The ALJ also noted the absence of emergency room records, even though plaintiff reported "debilitating anxiety symptoms in 2016 such as multiple panic attacks daily, including [a] severe one that allegedly lasted three days."  Tr. 27.  While there are no records that plaintiff went to an emergency room in 2016, she never claimed that she sought treatment at an emergency room.  Moreover, at one point, plaintiff kept a detailed written log of her panic attacks, and those records reflect that during an eleven-day period in April 2016 she suffered 16 panic attacks.  Tr. 320-22.

The ALJ also relied on records from a March 2016 therapy session where plaintiff "insist[ed]" that she had experienced a panic attack lasting three days, but literature indicates that panic attacks last only 5-15 minutes.  Tr. 27 (citing Tr. 642).  The ALJ found it significant that plaintiff's therapist "did not want to challenge her on this. . . ."  Tr. 27.  Plaintiff's therapist actually wrote that "[s]uggesting otherwise would be ill-fated and only increase[] [plaintiff's] anxiety. . . ."  Tr. 642.  Indeed, plaintiff's therapy records reflect that plaintiff did not fully understand her own mental impairment, and an important part of her treatment was increasing her knowledge about panic disorder.  Tr. 653.  Therefore, while plaintiff may have misunderstood her longer periods of anxiety symptoms to be panic attacks, that is not a clear and convincing reason for discounting her testimony.  Furthermore, the fact that plaintiff's therapist

believed it would increase plaintiff's anxiety if she challenged plaintiff on whether her symptoms met the definition of panic attacks, shows that plaintiff's anxiety was significant.

### E. Reports of Retirement

The ALJ relied on the fact that plaintiff was receiving retirement benefits from Social Security and from her former employer. Tr. 28. The fact that plaintiff was eligible for retirement benefits, and opted to receive them, is not necessarily inconsistent with disability.

The ALJ also cited the fact that Dr. Findley listed plaintiff's occupation as "retired" in treatment notes, finding that "claiming to be 'retired' from work seems somewhat inconsistent with claiming to be 'disabled' and unable to work." Tr. 28 (citing Tr. 570). Notably, it is not clear exactly what plaintiff said to Dr. Findley, only that the doctor listed "retired" as plaintiff's occupation. As such, it not evident that plaintiff actually claimed to be retired. Moreover, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." SSR 16-3p, at *10. In any event, the fact that plaintiff possibly referred to herself as retired is a weak reason, and because the ALJ's other reasons are not supported by substantial evidence, this reason standing alone is not a clear and convincing reason for discounting plaintiff's subjective symptom testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("Because the ALJ's other reasons . . . are not supported by substantial evidence, and because this reason is weak on this record, we conclude the ALJ erred. . . .").

## II. Medical Opinion Evidence

Plaintiff argues that the ALJ improperly assessed the medical opinion of non-examining physician, Dr. Anderson, and treating therapist, Zana Zeigler. The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d

747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### A. Dr. Anderson

The ALJ gave significant weight to Dr. Anderson's opinion. Tr. 29. Plaintiff argues that the ALJ failed to include all of the limitations assessed by Dr. Anderson. Pl. Br. 8, ECF #19. Dr. Anderson assessed that plaintiff would be moderately limited in her ability to interact appropriately with the general public and in her ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 100. Dr. Anderson explained in narrative form that plaintiff had "some anxiety/fears around others, and will be limited from public contact on a frequent basis, and from close cooperative work with coworkers." *Id.*

Where the ALJ professes to accept a doctor's opinion but without explanation fails to include the limitations contained in that opinion, the ALJ has effectively rejected the opinion. *See Kimble v. Berryhill*, No. 3:15-cv-01641-JE, 2017 WL 3332256, at *4 (D. Or. Aug. 4, 2017) (citing *Bobbitt v. Colvin*, No. 3:13-cv-01320-HZ, 2014 WL 2993738, at *9 (D. Or. Jul. 1, 2014)). The Ninth Circuit has explained that an ALJ properly interprets medical opinions by relying on

the narrative section of the opinion rather than the check-box or fill-in-the-blank sections. *See Buck v. Berryhill*, 869 F.3d 1040, 1050-51 (9th Cir. 2017). Here, the ALJ fully incorporated the specific limitations assessed by Dr. Anderson in the narrative portion of her opinion. *Compare* Tr. 100 (Dr. Anderson's assessed limitations of no more than frequent contact with the public and no close cooperation with coworkers) *with* Tr. 24 (the ALJ's RFC which limited plaintiff to "no more than frequent interaction with the public . . . [and] no close cooperative work with coworkers."). Accordingly, the ALJ properly assessed Dr. Anderson's opinion.

### B. Therapist Zeigler

Evidence from an acceptable medical source is used to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1521. Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502. Evidence from "other sources," including, but not limited to, "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, [and] therapists," may also be used to show the severity of a claimant's impairments and how they affect his ability to work. SSR 06-03p at *2. To reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Because Zeigler is a therapist, she is considered an "other source." 20 C.F.R. § 404.1502.

Zeigler was plaintiff's treating therapist. She completed a questionnaire regarding plaintiff's mental limitations and assessed that plaintiff was severely limited in her ability to complete a normal workday, interact with the general public, ask simple questions, and respond appropriately to criticism from her supervisors. Tr. 677.

The ALJ gave Zeigler's opinion "very little weight." Tr. 28. The ALJ found that the "severity of Ms. Zeigler's opinion is inconsistent with the overall evidence of record." Tr. 28. The ALJ specifically found that although Zeigler diagnosed agoraphobia, there was no evidence to support the diagnosis because plaintiff attended medical appointments, shopped, and exercised regularly. Tr. 28. However, two other mental health providers also diagnosed plaintiff with agoraphobia. Additionally, plaintiff testified that she spent most of her time at home, and she repeatedly reported difficulty leaving the home. Tr. 13, 63, 349, 624, 631-32, 639, 651-53, 657, 671. Therefore, the ALJ's assertion that there was no evidence of agoraphobia is not supported by the record.

The ALJ also found that Zeigler reported "profound anxiety in social situations [and] work situations," but there was "no evidence [plaintiff] had profound anxiety when she was working in the past, and she did not lose her job due to her anxiety." Tr. 28. However, plaintiff last worked in February 2012, one year prior to her alleged onset date of February 2013. Tr. 90, 184. Thus, this was an invalid reason to reject Zeigler's opinion.

The ALJ next found that because there was no evidence that plaintiff lost her job due to anxiety, it suggested that "many of the limitations reported by Ms. Zeigler were based on [plaintiff's] self-report not objective medical findings." Tr. 28. Again, that premise is flawed, as plaintiff last worked a year prior to her alleged onset date. Moreover, the Ninth Circuit has held that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. In *Buck*, the court held that a clinical interview and a mental status evaluation conducted by the psychiatrist provided sufficient objective measures. *Id.* Here, Zeigler performed a clinical interview and mental status

15 – OPINION AND ORDER

examination, and administered psychiatric testing. Tr. 630-35, 639. Accordingly, the purported over-reliance on self-reports was not a proper basis for rejecting Zeigler's opinion.

Finally, the ALJ found that Zeigler's conclusion that plaintiff was precluded from functioning in public or in proximity with others was too extreme and inconsistent with her own treatment notes, which indicated plaintiff had been volunteering at a nursing home, working on a book, and caring for her mother. Tr. 28. As discussed above, plaintiff's ability to work on what could best be described as a family scrapbook has no bearing on her ability to function in public or in proximity with others. Nevertheless, plaintiff's ability to volunteer at a nursing home and provide care for her mother are germane reasons for rejecting Zeigler's opinion.[3] Therefore, the ALJ properly rejected Zeigler's opinion on this basis.

## III. Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the testimony of plaintiff's cousins. Lay-witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114; (remaining citation omitted)). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234

---

[3] While these activities are not sufficient to satisfy the more stringent clear and convincing standard in the context of plaintiff's subjective symptom testimony, they are sufficient to meet the germane reasons standard. Moreover, in regard to plaintiff's symptom testimony, the issue was whether plaintiff spent a substantial portion of her day engaged in the activities, whereas in the context of Zeigler's opinion the issue is whether plaintiff was precluded from functioning in public or in proximity with others. Even though plaintiff did not spend a substantial portion of her time engaged in volunteering at a nursing home and providing care for her mother, her ability to perform those activities demonstrated that she was not precluded from functioning in public or in proximity with others.

(9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless. *Molina*, 674 F.3d at 1121-22.

The ALJ gave "little weight" to the written statements submitted by plaintiff's cousins. Tr. 29. One of plaintiff's cousins, Linda W., submitted an email on her own. Tr. 346. Another group of plaintiff's cousins submitted a joint statement. Tr. 343-44.

The ALJ found that Linda W.'s statement that plaintiff's anxiety had taken over her life was contradicted by plaintiff's activities, which included taking care of her mother, writing a book, exercising at a local pool, riding her bike, walking, shopping, driving, and spending time with her cousins bird watching. Tr. 29-30. The ALJ found that the joint statement, which claimed that plaintiff's functioning had worsened due to mental health, was inconsistent with the same activities. Tr. 29-30. As discussed above, plaintiff's ability to write a book was greatly overstated by the ALJ. However, plaintiff's ability to carry out the other activities constitute a germane reason for discounting Linda W.'s testimony as well as the joint statement from plaintiff's other cousins.[4]

## IV. Severe Impairments and RFC

Plaintiff argues that the ALJ erred by failing to assess functional limitations for her severe impairments, but fails to provide any specific examples. *See* Pl. Br. 6-7, ECF #19. In formulating the RFC, the ALJ must consider all of a claimant's impairments, both severe and

---

[4] As explained above, while these activities are not sufficient to satisfy the stricter clear and convincing standard, they are sufficient to meet the germane reasons standard.

non-severe. *Buck*, 869 F.3d at 1049; *see also* SSR 98-8p, 1996 WL 374184, at *5. Although the ALJ was required to consider plaintiff's severe and non-severe impairments in assessing the RFC, that does not mean the ALJ was required to include functional limitations for each impairment. Because plaintiff has not identified any specific examples, she has failed to identify any error with regard to the ALJ's assessment of her severe impairments.

## V.     Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met, as the ALJ erroneously assessed plaintiff's testimony. However, the second requisite is not met, as the record in this case is not fully developed. Even if plaintiff's improperly discounted testimony were credited as true, it is not clear that the ALJ would be required to find plaintiff disabled because the VE did not provide an opinion as to whether plaintiff would be able to perform jobs that exist in significant numbers

18 – OPINION AND ORDER

in the national economy when taking into account her described limitations. Moreover, the record does not contain an assessment of plaintiff's functional limitations by an acceptable medical source who treated or examined plaintiff.

On remand, the ALJ must (1) accept plaintiff's testimony or provide legally sufficient reasons for rejecting it, (2) order a consultative psychiatric exam by an acceptable medical source, (3) obtain additional VE testimony regarding what work plaintiff can do, if any, and (4) conduct any additional proceedings as indicated by the results of the foregoing instructions.

## CONCLUSION

For the reasons discussed above, the decision of the Commissioner is REVERSED and this matter is REMANDED for further proceedings.

DATED June 20, 2019.

                                              /s/ Youlee Yim You
                                          Youlee Yim You
                                          United States Magistrate Judge